UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AKKIAAS HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 4:13-CV-02313-SPM |
| ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying the application of Plaintiff Akkiaas Harris ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 11). Because I find the decision denying benefits was not supported by substantial evidence, I will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

**I.   FACTUAL BACKGROUND**

Plaintiff was born March 6, 1972. (Tr. 27). She last worked as a child care provider for one year and has not worked since May 1, 2010. (Tr. 27-28). She claims she can no longer work because of pain in her lower lumbar area that runs down her legs to her feet. (Tr. 28). She has been diagnosed with degenerative joint disease and lupus. (Tr. 29). She experiences numbness,

1

pain, pinching, throbbing, and tingling, and this has lasted for about eight years. (Tr. 28). She claims to be able to sit for approximately five minutes at a time, stand for about five to seven minutes at a time, and walk for five to ten minutes at a time. (Tr. 29-30). Plaintiff reports that it hurts to sleep, to take a shower, and to sit on the toilet. (Tr. 31). She completes household tasks with help from her husband and older children and by taking breaks. (Tr. 31). She reports that she cannot drive because she loses feeling in her legs and feet. (Tr. 116). Plaintiff has taken pain medication, but it does not help. (Tr. 30). She takes medication for her lupus. (Tr. 30-31).

## II. PROCEDURAL BACKGROUND

On June 2, 2011, Plaintiff applied for SSI, alleging that she had been unable to work since May 1, 2010 due to degenerative joint disease. (Tr. 90-96, 104). On July 11, 2011, her application was initially denied. (Tr. 40-45). On August 18, 2011, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 46-48). After a hearing on August 13, 2012, the ALJ issued an unfavorable decision. (Tr. 7-24). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council on October 3, 2012, but the Council declined to review the case on September 25, 2013. (Tr. 1-3). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a plaintiff must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore*

*v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 416.920(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

**IV.   THE ALJ'S DECISION**

Applying the foregoing five-step analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application date; that Plaintiff has the severe impairments of degenerative disc disease and obesity; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments in the listings. (Tr. 12). The ALJ found that Plaintiff has the RFC to perform the full range of sedentary work. (Tr. 13). He found that Plaintiff has no past relevant work; however, relying on the Medical-Vocational Guidelines ("the Guidelines"), he found that there are jobs

that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 20). Thus, the ALJ concluded that Plaintiff had not been under a disability from the application date through the date of his decision. (Tr. 21).

## V. DISCUSSION

Plaintiff argues that the ALJ erred because (1) the ALJ failed to find Plaintiff's lupus was a severe, medically determinable impairment at Step Two; (2) the ALJ's RFC finding was not supported by "some" medical evidence, and (3) the ALJ erred by relying on the Medical-Vocational Guidelines because Plaintiff had the nonexertional impairment of pain.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court

must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ's Step Two Finding

Plaintiff first argues that the ALJ erred at Step Two by not including Plaintiff's lupus to be one of her severe impairments. The court finds no error.

A severe impairment is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Basic work activities include, among other things, physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as various mental and physical activities. 20 C.F.R. § 416.921(b). The plaintiff bears the burden of establishing that an impairment is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

Here, although Plaintiff was diagnosed with lupus, Plaintiff failed to meet her burden of showing that her lupus significantly limited her ability to do basic work activities. The medical records show that Plaintiff developed a rash on her face and body in 2011 that was suspected to be lupus-related, that she was diagnosed with lupus in June 2012, and that she was treated for lupus and "her rash improved a good deal." (Tr. 159, 170-74, 177-79, 201-04, 221, 227). Neither the medical records nor Plaintiff's testimony suggest that Plaintiff's lupus limited her ability to perform any basic work activities.

It is also significant that Plaintiff did not allege in her application for disability benefits that her lupus (or the related rash) was disabling. (Tr. 90-96, Tr. 103-09). *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (finding the ALJ did not err by failing to include depression as a severe impairment; noting that "[t]he fact that [the claimant] did not allege depression in her application for disability benefits is significant, even if the evidence of depression was later

developed"). Instead, Plaintiff listed only degenerative joint disease as a basis for her disability claim. (Tr. 104).

For the above reasons, the ALJ's decision not to include lupus among Plaintiff's severe impairments was supported by substantial evidence. Moreover, even assuming *arguendo* that the ALJ did err by not finding lupus to be a severe impairment, such error was harmless in this case. Courts frequently find that an ALJ's error at Step Two in failing to find a particular impairment severe does not require reversal where the ALJ finds other severe impairments and considers all of a claimant's impairments, severe and non-severe, in his or her subsequent analysis. *See Spainhour v. Astrue*, No. 11-1056-SSA-CV-W-MJW, 2012 WL 5362232, at *3 (W.D. Mo. Oct. 30, 2012) ("[E]ven if the ALJ erred in not finding plaintiff's shoulder injury and depression to be severe impairments at step 2, such error was harmless because the ALJ clearly considered all of plaintiff's limitations severe and nonsevere in determining plaintiff's RFC."); *Givans v. Astrue*, No. 4:10-CV-417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. March 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's mental impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining the plaintiff's RFC). *See also* 20 C.F.R. § 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 416.920(c), 416.921, and 416.923, when we assess your residual functional capacity.").

Here, the ALJ considered all of Plaintiff's limitations, including her lupus, in his analysis after Step Two. In assessing Plaintiff's RFC, the ALJ specifically discussed Plaintiff's testimony

regarding her lupus diagnosis and the relevant medical records and concluded that Plaintiff's lupus did not preclude her from work activities. (Tr. 15-19).

In sum, the court finds no reversible error based on the ALJ's failure to include lupus among Plaintiff's severe impairments.

### C. The ALJ's RFC Finding

Plaintiff's second argument is that the decision must be reversed because the ALJ's determination that Plaintiff had the RFC to perform sedentary work[1] was not based on substantial evidence and was not based on any medical evidence. After review of the ALJ's decision and the record as a whole, the court agrees.

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001). Thus, although the ALJ is not limited to considering medical evidence, "some medical evidence 'must support the determination of the claimant's residual functional capacity, and the ALJ should obtain medical

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a). Sedentary work generally involves sitting for about six hours and standing or walking up to two hours in an eight-hour work day. SSR 96-9p, 1996 WL 374185, *3 (July 2, 1996).

8

evidence that addresses the claimant's ability to function in the workplace.'" *Id.* at 712 (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). An RFC assessment that is "not properly informed and supported by 'some medical evidence' in the record" cannot stand. *Id.*

After reviewing the ALJ's decision and the medical records, the court finds that the ALJ's conclusion that Plaintiff was capable of sedentary work is not supported by any medical evidence addressing Plaintiff's ability to function in the workplace. The record contains no medical opinion evidence and no report from a consultative examiner. Although the ALJ summarized some of Plaintiff's treatment notes and some of the objective medical evidence, none of that evidence addresses Plaintiff's ability to function in the workplace, and the ALJ does not explain how any of that evidence supports his conclusion that Plaintiff could perform all of the demands of sedentary work.

The court recognizes that in some cases, mild or unremarkable objective medical findings may constitute sufficient medical support for an RFC finding, even in the absence of any medical opinion evidence directly addressing the Plaintiff's ability to function in the workplace. *See, e.g.*, *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (upholding the ALJ's finding that the plaintiff could perform light work based on largely mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was "'silent' with regard to work-related restrictions such as the length of time she [could] sit, stand and walk and the amount of weight she can carry"); *Thornhill v. Colvin*, No. 4:12-CV-1150 (CEJ), 2013 WL 3835830, at *12 (E.D. Mo. July 24, 2013) (holding that medical records supporting the ALJ's statement that "physical examinations have been essentially unremarkable and reveal normal independent gait with no evidence of spine or joint abnormality or range of motion limitation or muscle tenderness" constituted medical evidence in support of a finding that the claimant could perform medium

work). Here, however, the record does not contain generally mild or unremarkable objective findings. Instead, nearly all of the medical evidence from the relevant time frame appears to support Plaintiff's claims that she has severe degenerative disc disease with lower back and leg pain and numbness that impair her ability to sit, stand, and walk for significant periods of time. Plaintiff consistently reported to her doctors very severe back pain that radiated down her leg to her foot and caused numbness, weakness, and/or difficulty standing or walking. (Tr. 159, 161, 170, 176, 201, 208, 221, 229, 251). An MRI in April 2011 revealed degenerative disc disease (Tr. 166), and an MRI in March 2012 revealed "severe degenerative disc disease" (Tr. 254). On examination, Plaintiff's treatment providers frequently recorded abnormal findings that appear to support Plaintiff's complaints, including findings of decreased sensation in the lower extremities, lower extremity weakness, positive straight leg test results, lumbar tenderness, and an antalgic gait. (Tr. 159, 171, 173, 178, 209, 219, 222, 230). Plaintiff's physicians treated her with medications (157-58, 173, 213, 222); referred her to a pain management clinic, where steroid nerve root injections were performed (Tr. 192, 213); strongly recommended physical therapy (while recognizing that her insurance would not cover it) (Tr. 191, 209); and indicated that she would require surgery for her L5-S disc problem (Tr. 231).

The Commissioner emphasizes that some examination findings in 2009 were mild or questionable; however, such records were dated prior to Plaintiff's disability onset date and do not address what she was capable of doing during her alleged period of disability. Although weighing the evidence is squarely and solely the province of the ALJ, any probative value of the 2009 findings is particularly questionable in light of the evidence from Plaintiff's MRIs and reports to her doctors suggesting that her condition was worsening over time. The Commissioner also cites findings from February 2012 and May 2012 that Plaintiff's gait and stance were

normal (Tr. 201-03, 219), a February 2012 finding that her cranial nerves were normal (Tr. 219), and a June 2012 finding that her strength was normal (Tr. 222). However, neither the Commissioner nor the ALJ explains how any of these occasional, isolated normal findings support the conclusion that Plaintiff can perform the physical requirements of sedentary work. In addition, although the Commissioner cites these findings, the ALJ does not discuss or rely on them in his decision. It does not appear to the court that these findings support the conclusion that Plaintiff can meet the demands of sedentary work, particularly in light of the overall pattern of abnormal findings in the record.

The Commissioner also emphasizes that the ALJ conducted a proper credibility assessment and considered several factors that undermined Plaintiff's subjective complaints, such as gaps in her medical treatment records and her failure to comply with recommendations to quit smoking. The court acknowledges that it was proper for the ALJ to consider such factors. However, a "credibility finding cannot substitute for medical evidence to support a finding that a claimant has a residual functional capacity to work." *Hulen v. Astrue,* 909 F. Supp. 2d 1065, 1072 (S.D. Iowa 2012) (citing *Soth v. Shalala*, 827 F. Supp. 1415, 1417 (S.D. Iowa 1993)).

In sum, because the ALJ's RFC finding was not informed and supported by "some medical evidence" in the record that addressed her ability to function in the workplace, this case must be reversed and remanded for further consideration. *See Hutsell*, 259 F.3d at 712. On remand, the ALJ may need to further develop the record regarding Plaintiff's ability to function, perhaps by contacting one of her treating physicians or by obtaining the services of a consultative examiner.

### D. The ALJ's Reliance on the Medical-Vocational Guidelines

Plaintiff's final argument is that because she suffers from pain, a significant nonexertional impairment, the ALJ erred by relying on the Medical-Vocational Guidelines instead of obtaining testimony from a Vocational Expert at Step Five. "Generally, where the claimant suffers from a nonexertional impairment such as pain, the ALJ must obtain the opinion of a vocational expert instead of relying on the Medical-Vocational Guidelines." *Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006). "However, the Guidelines still may be used where the nonexertional impairments do not diminish or significantly limit the claimant's residual functional capacity to perform the full range of Guideline-listed activities." *Id.* (quotation marks omitted).

Because the ALJ's reconsideration of Plaintiff's RFC on remand may affect the remaining steps of the disability analysis, the court need not address the question of whether the current Step Five finding is supported by substantial evidence. However, on remand, the ALJ should make it clear whether he finds that Plaintiff has any credible pain or other nonexertional impairments that affect her residual functional capacity to perform the full range of activities listed in the relevant section of the Medical-Vocational Guidelines before relying on those Guidelines.

### VI. CONCLUSION

For the reasons set forth above, the court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

/s/Shirley Padmore Mensah  
SHIRLEY PADMORE MENSAH  
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of February, 2015.